# EXHIBIT A

*Kristen Ryan v. Cushman & Wakefield, U.S., Inc.*
Case No. C-15-CV-26-002002
Current State Court Case Information



**Maryland Judiciary Case Search & Record Portal**    🔲 **Sign In / Register**

Go Back Now

# Case Detail

## Case Information

| | |
|---|---|
| Court System: | **Circuit Court For Montgomery County - Civil** |
| Location: | **Montgomery Circuit Court** |
| Case Number: | **C-15-CV-26-002002** |
| Case Title: | **Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.** |
| Case Type: | **Contract - Breach** |
| Filing Date: | **04/07/2026** |
| Case Status: | **Open** |

## Causes Information

| | |
|---|---|
| Filed Date: | **04/07/2026** |

## Involved Parties Information

### Defendant

| | |
|---|---|
| Name: | **Cushman & Wakefield, U.S., Inc.** |

NOTICE: For existing Odyssey Portal users, before your first login here, please watch the video titled - "Training Video for New Maryland Judiciary Case Search & Record Portal" at E-filing - Attorneys | Maryland Courts
Case event comments restored to legacy case search configuration.

### Plaintiff

| | |
|---|---|
| Name: | **Ryan, Kirsten** |
| Address: | **727 Owens Street** |
| City: **Rockville** | State: **MD**    ZIP Code: **20850** |

Attorney(s) for the Plaintiff

| | |
|---|---|
| Name: | **Jones, Ian Thomas** |
| Appearance Date: | **04/07/2026** |
| Address Line 1: | **18 West Church Street** |
| City: **FREDERICK** | State: **MD** ZIP Code: **21701** |
| Name: | **WEDDLE, JACOB IRA** |
| Appearance Date: | **04/07/2026** |
| Address Line 1: | **Remus, Weddle & Cavenee, LLC** |
| Address Line 2: | **18 West Church Street** |
| Address Line 3: | **2nd Floor** |
| City: **FREDERICK** | State: **MD** ZIP Code: **21701** |

## Court Scheduling Information

| Event Type | Event Date | Event Time | Judge | Court Location | Cou |
|---|---|---|---|---|---|
| **Conference - Pre-Trial** | **02/04/2027** | **01:30 PM** | **Smith, Karla N.** | **Civil** | **Cou** |

## Docket Entries

File Date: **04/07/2026**
Docket Entry Name: **Complaint / Petition**

File Date: **04/07/2026**
Docket Entry Name: **Supporting Exhibit**
Comment: **A**

File Date: **04/07/2026**
Docket Entry Name: **Case Information Report Filed**

File Date: **04/07/2026**
Docket Entry Name: **Attorney Appearance - No Fee**

File Date: **04/07/2026**
Docket Entry Name: **Summons Issued (Service Event) - New Case**

File Date: **04/07/2026**

Docket Entry Name: **Scheduling Order**

---

File Date: **04/07/2026**

Docket Entry Name: **Order - Mandatory Settlement Conference/Pretrial Hearing**

---

File Date: **04/07/2026**

Docket Entry Name: **Notice of Scheduling Hearing and Order of Court**

---

File Date: **04/07/2026**

Docket Entry Name: **Writ /Summons/Pleading - Electronic Service**

Comment: **Summons**

---

File Date: **05/05/2026**

Docket Entry Name: **Return of Service - 30 Day Summons Served**

Comment: **via mail**

---

File Date: **05/05/2026**

Docket Entry Name: **Supporting Exhibit**

Comment: **A- Return of Service - 30 Day Summons Served- via mail**

---

## Service Information

| Service Type | Issue Date |
| --- | --- |
| Summons Issued | 04/07/2026 |

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland Rules, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

Copyright © 2026. Maryland Judiciary. All rights reserved. | Environment: PROD | Version: 1.1

E-FILED; Montgomery Circuit Court
Docket: 4/7/2026 10:22 AM; Submission: 4/7/2026 10:22 AM
Envelope: 25905714

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**KIRSTEN RYAN.**
    727 Owens Street
    Rockville, MD 20850

    **Plaintiff,**

**v.**

**CUSHMAN & WAKEFIELD U.S., INC.**
    225 West Wacker Drive, Suite 3000
    Chicago, IL 60606
    **SERVE ON RESIDENT AGENT:**
    The Corporation Trust Incorporated
    2405 York Road, Suite 201
    Lutherville-Timonium, MD 21093

    **Defendant.**

Case No. C-15-CV-26-002002

## COMPLAINT

Plaintiff Kirsten Ryan ("Plaintiff") by and through undersigned counsel, files the instant Complaint against Defendant Cushman & Wakefield U.S., Inc. ("Defendant" or "Company"), and states the following in support thereof:

### PARTIES, JURISDICTION, & VENUE

1.    Plaintiff is an adult residing in Rockville, Maryland.

2.    Defendant is a corporation organized under the laws of Missouri with its principal place of business in Chicago, Illinois.

3.    Defendant is a registered foreign corporation in the State of Maryland.

4. Pursuant to MD CODE ANN., CTS. & JUD. PROC. § 6-103(b), this Court has personal jurisdiction over Defendant because Defendant transacts business and/or contracts to supply services in the State of Maryland.

5. Pursuant to MD CODE ANN., CTS. & JUD. PROC. § 1-501, this Court has subject matter jurisdiction over this action, because the Circuit Court is a court of general jurisdiction with full common law and equity powers in the State of Maryland.

6. Venue is proper in this judicial forum pursuant to MD CODE ANN., CTS. & JUD. PROC. § 6-201(a) because Defendant carries on a regular business in Montgomery County, Maryland.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff was a real estate broker for Defendant from January 1, 2018 until October 29, 2025. During this time, Plaintiff often provided services to clients for Defendant from her home in Rockville, Maryland.

8. Before becoming a real estate broker for Defendant, Plaintiff worked for Defendant in various capacities in support of its real estate business beginning in 2013.

9. Plaintiff and Defendant entered into a written broker/salesperson agreement purporting to set forth the terms of their relationship on or about January 1, 2018. This agreement is attached to the Complaint as Exhibit A.

10. Plaintiff worked in Defendant's DC Metro Healthcare Advisory Practice ("Healthcare Advisory Practice").

11. During her time working for Defendant, Plaintiff ascended from a role as a salaried support employee to a full-fledged real estate broker. As a broker, she originated and closed dozens of real estate transactions each year, including many transactions worth millions of dollars. By

2025, Plaintiff's title at Defendant was Senior Director, and she, as well as her colleague of equal standing, Lindsey Groom, were both on the cusp of being eligible for promotions to Managing Director based on their exemplary performances as brokers.

12.    Along with her colleagues, Plaintiff was instrumental in building and growing the Healthcare Advisory Practice.

13.    Plaintiff worked closely with her manager, Matthew Sullivan, in the Healthcare Advisory Practice. Sullivan's title was Executive Managing Director of the Healthcare Advisory Practice.

14.    As a real estate broker, Plaintiff was compensated based on commissions received by Defendant from real estate transactions that Plaintiff and/or her colleagues in the Healthcare Advisory Practice facilitated and closed. *See generally* Ex. A.

15.    It was the practice of brokers in the Healthcare Advisory Practice to split the gross commissions received by the Defendant from real estate deals closed by the Healthcare Advisory Practice. More specifically, each member of the Healthcare Advisory Practice received a pre-determined percentage of the commission received by Defendant from all the deals closed by the Practice. Therefore, brokers within the Healthcare Advisory Practice routinely received commissions from real estate deals in which they did not personally provide brokerage services.

16.    For example, Plaintiff received commissions ranging from 18-20% of the gross commission payable to Defendant upon the close of a transaction by the Healthcare Advisory Practice, whether or not she brought in the client or provided any brokerage services to the client.

17.    The practice of splitting commissions among members of the Healthcare Advisory Practice was established beginning in at least 2018, and commissions from more than 500 closed

real estate transactions were distributed to Plaintiff and other members of the Healthcare Advisory Practice on this basis.

18.  In or about late September 2025, Matthew Sullivan advised Plaintiff that her role with the Healthcare Advisory Practice needed to change from that of a broker to a role that he termed as the "COO of Transactions." The Healthcare Advisory Practice, of course, never before had a "COO of Transactions." Rather, brokers were responsible for handling the administrative processing of transactions on which he or she worked with the assistance of other salaried employees of Defendant. Accordingly, this new role would be a salaried position with less financial upside and professional growth potential, and Plaintiff would no longer be involved in soliciting new business and would only focus on servicing the existing business.

19.  Plaintiff had been a broker in the Healthcare Advisory Practice of Defendant for nearly eight (8) years and viewed Sullivan's ill-defined proposed change to her role as a demotion, not only in terms of lesser earning potential (commissions versus a fixed salary), but also in terms of lesser opportunities for professional growth and development. Plaintiff initially refused to accept this lessened role.

20.  On or about October 2, 2025, Sullivan again presented Plaintiff with the change to her role in the Healthcare Advisory Practice, this time indicating that she could either accept the new undefined role as "COO of Transactions" or leave the Company.

21.  Upon information and belief, Sullivan desired to terminate Plaintiff's tenure with the Company because Plaintiff was earning significant commissions, was due for a promotion, and because Plaintiff's colleague, Lindsey Groom, was on the same promotional track and commission structure. By eliminating Plaintiff's commission structure, Sullivan and other brokers in the Healthcare Advisory Practice would earn greater commissions.

22.    Despite her initial reluctance, on or about October 3, 2025, Plaintiff informed Sullivan that she would accept the role as "COO of Transactions" out of a desire to continue working with the Healthcare Advisory Practice, which she successfully helped build.

23.    However, after additional discussions with Sullivan, it became clear to Plaintiff that the new position, which was hastily promised without any structure or clearly defined duties and opportunity for advancement, was destined to fail. Sullivan further advised Plaintiff that he did not want to put Plaintiff in a position where she did not think she could succeed. Nevertheless, he promised to "pay [her] out" for her work in the Healthcare Advisory Practice.

24.    On or about October 6, 2025, Sullivan told Plaintiff "I'm done - and we can come up with whatever story that you want" about her departure from the Company. Sullivan and Plaintiff agreed that her last day at the Company would be October 31, 2025, and Sullivan again promised to "pay [Plaintiff] out."

25.    Upon information and belief, Sullivan never intended to engage Plaintiff as "COO of Transactions," as evidenced by the fact that he did not hire anyone in such a position following Plaintiff's departure from the Company. Sullivan's offer of such a position to Plaintiff was illusory.

26.    In the intervening days and weeks, Sullivan repeatedly gave Plaintiff assurances that she would be "paid out" for her work with the Healthcare Advisory Practice. Relying upon these assurances, Plaintiff continued working for Defendant and diligently helped transition her clients to other brokers in the Healthcare Advisory Practice.

27.    On or about October 21, 2025, Plaintiff emailed Sullivan asking for his assistance in drafting a "protected list" of real estate transactions that would produce commissions payable to her after she left the Company.

28.    Pursuant to paragraph 8 of Plaintiff's broker/salesperson agreement with Defendant, at or prior to the end of her engagement with the Company, Plaintiff was required to prepare, on a form provided by the Company, a "Pending Deals List," which set forth "all uncompleted transactions upon which [Plaintiff] had been working." *See* Ex. A ¶ 8(a). Plaintiff's email to Sullivan about the "protected list" was an effort to comply with this obligation, ensure a smooth transition of clients to other brokers, and confirm the deals she would be paid commission on after she left the Company.

29.    In an email response to Plaintiff on October 23, 2025, Sullivan described the content of the pending deals list for which Plaintiff would be paid commissions after her departure as follows: "anything we book before December 31st no change . . . [t]hen pick like 10 deals that could go to March 31 (thought is if some of the bigger deals like Lafayette or Huntsville leak, you should be paid on them)."

30.    Plaintiff understood Sullivan's email to mean she and her team would split, as was their custom, commissions on all deals that the Healthcare Advisory Practice closed prior to December 31, 2025 (as Sullivan had previously promised her), along with 10 deals of her choice that "leaked" between January 1, 2026 and March 31, 2026, including Lafayette and Huntsville, which were two of the Healthcare Advisory Practice's "bigger deals" with sizable commissions. Conversely, Plaintiff reasonably relied upon and understood that any commissions for deals on which she was the principal broker would also be split with other brokers, as was the Healthcare Advisory Practice's long-standing custom and course of dealing.

31.    In an email dated October 28, 2025, Plaintiff sent Sullivan a draft of her resignation letter and a pending deals list that conformed to the parameters he set forth in his October 23, 2025

Page 6 of 15

email (described above). In this email, Plaintiff also advised Sullivan that she accepted a job offer for a broker position at another real estate brokerage firm.

32.    By email dated October 29, 2025, Sullivan responded to Plaintiff that it "is awesome!!" that she accepted a job at another real estate brokerage firm.

33.    Indeed, it is common for real estate brokers to move between different real estate brokerage firms during their careers. Plaintiff's broker/salesperson agreement with Defendant did not contain non-compete restrictive covenants.

34.    Later that day, Plaintiff emailed Sullivan and Kevin Brandt, the Director of Brokerage for Defendant, a draft of her resignation letter and the pending deals list that conformed to the parameters set forth by Sullivan in his October 23, 2025 email (described above) and his prior promises to Plaintiff.

35.    Upon information and belief, Kevin Brant previously worked at a competing real estate brokerage firm to Defendant.

36.    Hours after Plaintiff sent this email to Sullivan and Brandt, Defendant terminated Plaintiff's access to her files. As such, Plaintiff's engagement as a broker for Defendant effectively ended on October 29, 2025: two days before Plaintiff's previously planned resignation.

37.    Paragraph 5 of the broker/salesperson agreement requires the parties to give "fourteen (14) days prior written notice to the other of the election to terminate." Ex. A ¶ 5. Defendant did not provide Plaintiff with the proper written notice prior to her termination on October 29, 2025.

38.    In an email dated November 3, 2025, Sullivan sent Plaintiff a pending deals list that substantially differed from the list he initially proposed via email on October 23, 2025 (described above). This list contained far fewer deals resulting in significantly less compensation to Plaintiff.

Most notably, Defendant's proposed deal list removed many of the ten (10) deals of Plaintiff's choice that might "leak" to the end of the first quarter of 2026 and removed altogether Plaintiff's commission split on the substantial Lafeyette and Huntsville deals, which Sullivan previously admitted Plaintiff should be paid on. Plaintiff asked Sullivan to reconsider the deals list in light of his previous promises to her during the month of October.

39. In an email dated November 19, 2025, Brant sent Plaintiff another pared-down deals list, which cut out the commissions payable to Plaintiff by over $400,000 from the commissions potentially payable to her pursuant to the list described by Sullivan's October 23, 2025 email (described above) and Sullivan's prior promises to her.

40. If Plaintiff accepted the pared-down pending lists of deals proposed by Defendant (through Sullivan and Brant), Sullivan and other brokers in the Healthcare Advisory Practice would receive a larger amount of the commissions received by Defendant from the deals that were excluded from the list proposed to Plaintiff — such is the natural consequence of one less broker in the Healthcare Advisory Practice splitting commissions on those deals.

41. Further, under Defendant's pared-back deals list, Plaintiff would be cut out of the commissions for many deals that she worked on during the months prior to her termination because many real estate deals close in the final quarter of the year, or "leak" into the first quarter of the following year.

42. Paragraph 8(b) of Plaintiff's broker/salesperson agreement with Defendant states that "[Plaintiff] shall not be entitled to share in any commissions or fees collected by C&W subsequent to the termination of [Plaintiff's] engagement, except as otherwise agreed to by [Plaintiff] and C&W and set forth in a fully executed Pending Deals List . . . ." Ex. A ¶ 8(b). The written agreement further emphasizes this point in the same section stating, "[e]xcept as

specifically provided in this subparagraph (b), you shall not be entitled to any commission, fees, or other remuneration whatsoever from C&W· subsequent to the termination of [Plaintiff's] engagement." *Id.* ·

43.    Defendant and Plaintiff have never fully executed a Pending Deals List as contemplated by paragraph 8(b) of the broker/salesperson agreement.

44.    Despite these contractual provisions, and in the absence of a fully executing Pending Deals List, Defendant continued to pay Plaintiff commissions after her termination. Defendant has breached, or otherwise waived or modified, Plaintiff's broker/salesperson agreement, particularly with respect to its provisions related to payment of Plaintiff's post-termination commissions.

45.    Indeed, Defendant has paid Plaintiff commissions totaling $71,849.94 since her termination on October 29, 2025.

46.    Further, Defendant has paid Plaintiff commissions for no less than six (6) deals that the Healthcare Advisory Practice closed after Plaintiff's termination—the total amount of commission Plaintiff received from these deals is $3,912.76.

47.    Defendant insists that it has plenary discretion to determine what commissions Plaintiff gets paid following the end of her engagement on October 29, 2025, regardless of what Sullivan previously promised her, the terms set forth in the broker/salesperson agreement, and/or the prior course of dealing of the brokers in the Healthcare Advisory Practice.

48.    Accordingly, Defendant has not paid Plaintiff commissions for the vast majority of deals promised to her by Sullivan in his October 23, 2025 email (described above) and in his earlier assurances to "pay [her] out."

49.    Paragraph 3 of Plaintiff's broker/salesperson agreement with Defendant also requires to Defendant to annually "make available to [Plaintiff] a statement setting forth in reasonable detail the commissions and fees payable potentially to became payable to C&W as a result of the consummated transaction in which [Plaintiff] ha[s] participated." Ex. A ¶ 3.

50.    Despite repeated demands by Plaintiff, Defendant has not produced the statement required by paragraph 3 of the broker/salesperson agreement.

### COUNT I – BREACH OF CONTRACT

51.    Plaintiff adopts and incorporates by reference all the forgoing allegations as if set forth in full herein.

52.    Plaintiff and Defendant had a valid and enforceable contract governing their relationship with respect to Plaintiff's work for Defendant as a real estate broker.

53.    Plaintiff fully performed under this contract by, *inter alia*, providing real estate brokerage services to Defendant and/or Defendant's clients.

54.    Defendant materially breached this contract by failing to pay Plaintiff her share of commissions on real estate deals closed by the Healthcare Advisory Practice after her termination, as agreed by Matthew Sullivan on multiple occasions and as was the course of dealing of the Healthcare Advisory Practice.

55.    Defendant breached or otherwise modified or waived any right it might have under the written agreement for a "fully executed" Pending Deals List setting forth the post-termination commission payments to Plaintiff by making substantial payments to Plaintiff after her termination.

56.    As a direct, legal, and/or proximate cause of Defendant's material breach, Plaintiff suffered damages.

## COUNT II – BREACH OF CONTRACT

57. Plaintiff adopts and incorporates by reference all the allegations in Paragraphs 1 through 50 as if set forth in full herein. Pursuant to Maryland Rule 2-303(c), Count II is asserted in the alternative to Counts I, III, and IV.

58. Plaintiff and Defendant had a valid and enforceable contract governing their relationship with respect to Plaintiff's work for Defendant as a real estate broker.

59. Plaintiff fully performed under this contract by, *inter alia*, providing real estate brokerage services to Defendant and/or Defendant's clients during the term of the contract.

60. Defendant materially breached the contract by failing to honor its agreement to pay Plaintiff her share of commissions on deals closed by the Healthcare Advisory Practice after her termination, by failing to provide her with fourteen (14) days prior written notice to her termination, and by failing to provide her with the annual statement of real estate deals she participated in that could or did produce commissions payable to Defendant in the year 2025.

61. Defendant acted arbitrarily and in bad faith with these breaches, injuring Plaintiff's right to receive the benefit of the contract. Defendant acted as if no contract existed between the parties and it had no duties to Plaintiff, which, in addition to breaching the contract between the parties, breached the implied covenant of good faith and fair dealing.

62. As a direct, legal, and/or proximate cause of Defendant's material breach, Plaintiff suffered damages.

## COUNT III – PROMISSORY ESTOPPEL

63. Plaintiff adopts and incorporates by reference all the allegations in Paragraphs 1 through 50 as if set forth in full herein. Pursuant to Maryland Rule 2-303(c), Count III is asserted in the alternative to Counts I, II, and IV.

64.     Defendant made a clear and definite promise to pay Plaintiff her customary commission split on all deals that the Healthcare Advisory Practice closed prior to December 31, 2025, along with ten (10) deals of her choice that closed between January 1, 2026 and March 31, 2026, including the Lafayette and Huntsville deals.

65.     Defendant reasonably expected this promise would induce action by Plaintiff.

66.     Defendant's promise did in fact induce Plaintiff to act: Plaintiff rationally relied on such promise when she continued to provide brokerage services to Defendant and/or Defendant's clients for weeks after Defendant informed Plaintiff she needed to resign in early October 2025.

67.     Defendant wrongfully withheld payment to Plaintiff for the vast majority of the commissions promised to her, and injustice will result if Defendants' promise is not enforced.

68.     As a direct, legal, and/or proximate cause of Defendant's failure to deliver what it promised, Plaintiff suffered damages.

### COUNT IV – UNJUST ENRICHMENT

69.     Plaintiff adopts and incorporates by reference the allegations in Paragraphs 1 through 50 as if set forth in full herein. Pursuant to Maryland Rule 2-303(c), Count IV is asserted in the alternative to Counts I, II, and III.

70.     As detailed above, Defendant made a clear, definite promise to Plaintiff to pay Plaintiff her customary commission split on all deals that the Healthcare Advisory Practice closed prior to December 31, 2025, along with 10 deals of her choice that closed between January 1, 2026 and March 31, 2026, including the Lafayette and Huntsville deals.

71.     Defendants reasonably expected that its promise would induce Plaintiff to act.

72.     In reasonable reliance on Defendant's promise, Plaintiff did act and conferred a benefit on Defendant: Plaintiff continued to provide brokerage services to Defendant and/or

Defendant's clients for weeks after Defendant informed Plaintiff she needed to resign in early October 2025. Defendant had knowledge of this benefit.

73. Defendant failed to fully perform its promise: Defendant did not pay Plaintiff the vast majority of the commissions promised to her, namely the her commission splits on deals closed by the Healthcare Advisory Practice before the end of 2025, and 10 deals of her choice that closed between January 1, 2026 and March 31, 2026, including the Lafayette and Huntsville deals.

74. Defendant retains the full benefit of Plaintiff's actions, and injustice will result if Defendants retain this benefit without full payment to Plaintiffs.

75. As a direct, legal, and/or proximate cause of Defendant's failure to deliver what it promised, Plaintiff suffered damages.

## COUNT V – INTENTIONAL MISREPRESENTATION/FRAUD

76. Plaintiff adopts and incorporates by reference the allegations in Paragraphs 1 through 50 as if set forth in full herein.

77. Defendant, by and through Matthew Sullivan, made false statements to Plaintiff orally and in writing during the month of October 2025 with respect to her compensation following the end of her employment with Defendant. To wit, on or about October 23, 2025, Defendant, by and through Matthew Sullivan, told Plaintiff via email that she would be paid her customary commission split on all deals that the Healthcare Advisory Practice closed prior to December 31, 2025, along with ten (10) deals of her choice that closed between January 1, 2026 and March 31, 2026, including the Lafayette and Huntsville deals. Defendant, by and through Matthew Sullivan, also made similar oral promises about paying out Plaintiff for her work for the Healthcare Advisory Practice during the month of October 2025.

78.    These statements were false, or made with a reckless indifference to the truth, because Defendant never intended to pay Plaintiff commissions on the promised deals. Defendant, by and through Matthew Sullivan, sought either to terminate Plaintiff or transition her to a salaried role wherein she would no longer receive commissions, which, in either event, would increase the size of commissions payable to Sullivan and other brokers for deals closed by the Healthcare Advisory Practice.

79.    The false statements were made to induce Plaintiff to continue working for Defendant long enough to transition clients to other brokers in the Healthcare Advisory Practice and to not disrupt any ongoing deal negotiations. Had Defendant, by and through Matthew Sullivan, not made the false statements and instead agreed to compensate Plaintiff on the few deals ultimately offers to her, Plaintiff would not have continued working (beyond what was required by her contract) for Defendant during the month of October after Sullivan informed her, she needed to resign.

80.    In justified and reasonable reliance on Defendant's false statements, Plaintiff continued to work at Defendant for the remainder of the month of October supporting Defendant's business beyond what was required of her by her contract.

81.    As a result of Defendant's false statements, Plaintiff incurred damages.

82.    Defendant's false statements were made with actual malice as such statements were characterized by evil motive, intent to injure, ill will, and/or fraud.

WHEREFORE, Plaintiff Kirsten Ryan respectfully request this Court enter judgment against Defendant Cushman & Wakefield U.S., Inc., for compensatory damages in an amount that exceeds $75,000, punitive damages in the amount of $500,000, plus any applicable pre- and post-

judgment interest, attorneys' fees permitted by contract, and any additional costs or further relief

this Court deems just and proper.

Respectfully submitted,

*/s/ Jacob I. Weddle*
Jacob I. Weddle, Esq. (CFP #0712120390)
Ian T. Jones, Esq. (CFP #2511201126)
Remus, Weddle & Cavenee, LLC
18 West Church Street
Frederick, Maryland 21701
301-206-5770 (office)
301-206-5771 (fax)
jweddle@rwclawyers.com
ijones@rwclawyers.com
*Counsel for Plaintiff*

E-FILED; Montgomery Circuit Court
Docket: 4/7/2026 10:22 AM; Submission: 4/7/2026 10:22 AM
Envelope: 25905714

SECTION 3508 BROKER-SALESPERSON AGREEMENT

## SECTION 3508 BROKER-SALESPERSON AGREEMENT

THIS AGREEMENT is made as of this 1st day of January, 2018 between CUSHMAN & WAKEFIELD U.S., INC. ("C&W") and Kirsten Ryan ("you" or "your"); and such parties mutually agree as follows:

1.    Engagement & Duties. C&W hereby engages you as a real estate broker/salesperson ("C&W Professional") and you accept such engagement. C&W shall furnish you with equipment, supplies, support and services that C&W deems appropriate and necessary to facilitate the transaction of C&W's real estate services business by you. C&W shall treat you in a manner generally consistent with that in which it treats other C&W Professionals of similar status (subject to the terms contained herein and in the contracts of such other C&W Professionals). You shall faithfully devote your full business time and best efforts to aid and assist C&W in the transaction of C&W's business. You shall conduct your activities and behave in a manner so as to maintain and promote the business and reputation of C&W at all times. C&W shall have the right to direct you with respect to the methods, techniques and procedures utilized by you in the performance of your services in order to assure that the good will and reputation of C&W are not diminished or impaired. You shall not collect or receive any monies or other consideration for any real estate related business undertaken or services rendered other than in the name of, on behalf of, and as a C&W Professional. You hereby represent that you are duly licensed to conduct real estate brokerage in Washington, D.C.

2.    Section 3508 Status. C&W will not treat you as an employee for Federal or State tax purposes but rather as a statutory non-employee (independent contractor) and as such, no income tax withholdings will be made by C&W from remuneration it pays to you and you shall receive a Form-1099 following the close of each year you are engaged hereunder, not a Form W-2. Therefore, you agree that you shall be solely responsible for complying with the tax and reporting requirements of, and making your own personal quarterly or other tax filings and payments to, the appropriate taxing authorities. C&W shall report any applicable fringe benefits as a taxable benefit on your annual Form-1099. You further agree to promptly enter into modifications and revisions to this Agreement as may be necessary to maintain and/or secure your status and treatment as an independent contractor under applicable Internal Revenue Service rules and regulations.

3.    Compensation & Benefits. C&W shall pay you and you accept as your full and only remuneration for all services rendered, the percentages of the commissions and fees collected by C&W on transactions in which you have rendered services, in accordance with the terms and conditions set forth in the Standard Schedule of Compensation annexed hereto and made part of this Agreement. C&W shall also provide you with the standard C&W fringe benefits generally extended to other C&W Professionals of like status and responsibility and in accordance with C&W's policy as may be determined from time to time during the term of this Agreement. C&W shall have the right to set-off or recoup from your remuneration any monies due C&W from you pursuant to this Agreement or pursuant to any arrangement between C&W and you for advances or draws against commissions and fees. C&W shall have the right to withhold from your remuneration those amounts deemed sufficient by C&W based upon or in relation to any claim be made or threatened by or against C&W with respect to any applicable commission or fee collected, including the internal allocation of same, or if any applicable commission or fee be subject to any contingency requiring or potentially requiring the return of same. C&W shall have the right, at any time upon prior written notice to you, to, in its sole discretion, amend or modify (a) the percentages of commissions and fees, and/or the terms and conditions for payment of same as of the effective date of any such amendment or modification and/or (b) C&W's standard fringe benefits policy; provided, however, that any such amendment or modification of the Schedule of Compensation or of the standard fringe benefits policy shall not be made with respect to you only, but shall be made only pursuant to a general corporate policy. You shall not assign, pledge or hypothecate any commission, fee or part thereof. Annually, C&W shall make available to you a statement setting forth in reasonable detail the commissions and fees payable and potentially to become payable to C&W as a result of consummated transactions in which you have participated. Nothing therein is intended or shall

CUSHMAN &
WAKEFIELD                1

# Exhibit A

SECTION 3508 BROKER-SALESPERSON AGREEMENT

be deemed to amend or modify the terms and conditions upon which monies potentially payable to you will be deemed earned by you as set forth in the Standard Schedule of Compensation or any other written contract between you and C&W. Notwithstanding anything herein to the contrary, no commission or fee shall be deemed earned by you until all conditions (whether precedent and/or subsequent) to your entitlement to the commission or fee have been satisfied. Until all such conditions have been satisfied, any payments or portions thereof made by C&W to you which are subject to being repaid to C&W based upon the failure of a particular condition, shall be deemed an unearned advance for all purposes.

4.    Duties. You shall faithfully observe and comply with the real estate laws, rules and regulations of the states, counties and localities in which your primary business address is located and you are licensed and with the code of ethics, by-laws, rules and regulations of any applicable state, county or local real estate board(s), and shall read and be governed by all written codes of conduct, policies, rules, regulations and office procedures of C&W in effect from time to time. *The codes of conduct, written policies, rules, regulations and office procedures of C&W are deemed to be a material part of this Agreement and by this reference are incorporated in this Agreement and made part hereof;* and any change in same may be adopted by C&W in its sole discretion, without consultation with you, and shall be effective and constitute an amendment and modification of this Agreement upon receipt by you of a copy thereof or posting thereof on C&W's internal website.

5.    Term. Your engagement under this Agreement shall commence as of January 1, 2018 ("Commencement Date"), and shall continue in effect until terminated by either party giving fourteen (14) days prior written notice to the other of the election to terminate. C&W shall have the right to terminate your engagement immediately by written notice to you where such termination is for cause, including without limitation, for your dishonesty, fraud, or misrepresentation to C&W or any third person; unauthorized investment in real estate; self-dealing; unauthorized disclosure of C&W's or any third party's confidential information and/or trade secrets; failure to diligently pursue business for C&W in good faith; or refusal or failure to comply with the terms of this Agreement or the policies, rules, regulations or office procedures of C&W; provided, however, that if such cause is curable, C&W's notice shall provide you with at least five (5) business days to cure.

6.    Authority. You shall have no right or authority to obligate or bind C&W, whether by agreement, promise, representation or otherwise to any contract or commitment of any kind, including, without limitation, to purchase materials or retain services or to fix the rate, amount, manner of payment or division of commissions and fees, without first obtaining the prior written approval of C&W. C&W shall at all times have the sole and absolute right to determine the commission or fee to be charged to any client and the sole discretion to decide whether any transaction on which you have been working is consummated in whole or in part by your efforts. If a percentage of any commission or fee is determined to be paid to you (subject to all terms and conditions of the Standard Schedule of Compensation or any other written contract between you and C&W), and C&W personnel other than you contributed to or assisted in consummating any such transaction, you shall abide by and accept C&W's decision with respect to the amount and the allocation of your share of the commission or fee. In the event of a dispute regarding the division of any transaction commissions among C&W brokers in the United States that cannot be resolved by the parties in good faith, C&W shall have the sole and absolute right to determine the settlement of such dispute.

7.    Disputes. (a)  In the event any transaction in which you are involved results in a dispute, arbitration or litigation, you shall cooperate fully with C&W, and you and C&W shall share any fees, expenses, settlements, awards and/or judgments in connection therewith in the same proportion as we would normally share the commission or fee resulting from such transaction; provided however, if in the course of performing services for C&W in accordance with the terms of this Agreement, either or both of us are made a party defendant in any arbitration, litigation, or other legal proceeding and provided that you have not exceeded your authority or otherwise acted contrary to the terms of this Agreement with respect to the transaction involved, then C&W shall indemnify, defend and hold you harmless from and with respect to any fees, expenses, settlements, awards and/or judgments which are, in the

SECTION 3508 BROKER-SALESPERSON AGREEMENT

aggregate, in excess of your share of the commission or fee received or potentially to be received by you relating to the transaction in dispute.

(b)    C&W shall have the right to determine in its sole discretion whether or not any dispute, arbitration or litigation shall be initiated, prosecuted, defended, compromised or settled, to determine counsel to be employed in connection therewith; and to determine the terms and conditions of any compromise or settlement. To the extent possible, any dispute, arbitration or litigation in which you are interested shall be prosecuted solely by, through and in the name of C&W. If you do not desire to have any commission or fee collection action in which you have or may have an interest pursued, and provided that you deliver written notice of same to C&W prior to the commencement of any such action together with a statement waiving any remuneration in connection with such transaction and any participation in any recovery, then you shall not be required to contribute toward the cost of any such dispute, arbitration or litigation and any resulting recovery shall be retained exclusively by C&W.

(c)    You shall indemnify, defend and hold C&W, as well as its subsidiaries and affiliates, employees, officers and directors harmless from and with respect to any loss, liability, damages, costs and expenses including, without limitation, reasonable attorney's fees arising out of or related to your breach of this Agreement or the written codes of conduct, policies, rules, regulations and office procedures of C&W in effect from time to time or any activity not related to or beyond the scope of your engagement with C&W.

8.    Post-Termination. (a)  At or prior to the termination of your engagement, you shall deliver to C&W a complete list of all uncompleted transactions upon which you had been working, on the form provided to you by C&W ("Pending Deals List"), together with the complete files (both hard copy and electronically stored) relating to each such transaction. All such transactions, as well as all other transactions initiated, handled or negotiated by you during the term of your engagement, in addition to all files (hard copy and electronically stored) relating to such transactions, are, and subsequent to termination of your engagement shall continue to be, the sole and exclusive property of C&W and C&W shall retain its rights to manage such transactions.

(b)    You shall not be entitled to share in any commissions or fees collected by C&W subsequent to the termination of your engagement, except as otherwise agreed to by you and C&W and set forth in  a fully executed Pending Deals List referenced in Paragraph 8(a) above.

Your share of any commissions and fees collected by C&W subsequent to the termination of your engagement shall be subject to reduction by an amount to be determined by C&W if subsequent work or negotiations are necessary to conclude the transaction and C&W assigns other of its C&W Professionals to handle same, to any commission or fee sharing arrangement made by you with any other C&W Professionals, and to all the other applicable terms and conditions of this Agreement. Except as specifically provided in this subparagraph (b), you shall not be entitled to any commission, fees or other remuneration whatsoever from C&W subsequent to the termination of your engagement.

(c)    You acknowledge and agree that all  documents and information furnished to you or received or developed by you during your engagement by C&W, including without limitation all files, forms, correspondence, leads, and other documents and information concerning C&W and its customers (including information that C&W receives from its customers with an expectation that such information will be treated confidentially), whether in hard copy or electronic format, are the exclusive property of C&W and are to be held by you in the strictest confidence. You shall comply at all times with C&W's then current Confidentiality and Non-Solicitation Policy, including but not limited to the restrictions set forth therein with respect to soliciting or (i) encouraging any employee or independent contractor of C&W or any of its subsidiaries or affiliates to terminate their employment/engagement with C&W or (ii) otherwise interfering with the business or patronage of any "Active Customer" (as defined in said Policy). You are entitled to retain copies of written or printed material and other property, including without limitation, your contact lists, and papers, files, memoranda and correspondence specifically relating to any closed, pending or prospective transactions on which you were working at or prior to the

SECTION 3508 BROKER-SALESPERSON AGREEMENT

termination of your engagement, subject to C&W's reasonable approval of same; but in no event shall you be entitled to retain or utilize any C&W proprietary information subsequent to such termination.

9.    Remedies. The parties shall have all remedies existing in law and equity to enforce the terms of or obligations arising out of this Agreement, including, but not limited to, the right to injunctive relief. In the event any legal action or proceeding is commenced to interpret or enforce the terms of or obligations arising out of this Agreement, or to recover damages for the breach thereof, the party prevailing in any such action or proceeding shall be entitled to recover from the non-prevailing party all reasonable legal fees, costs and expenses incurred by the prevailing party. The parties hereto shall and do hereby waive a trial by jury in any action, proceeding or counterclaim brought or asserted by either against the other on any matters whatsoever arising out of this Agreement.

10.    Miscellaneous. This Agreement: (i) expresses the parties' entire agreement on the matters covered hereinabove; (ii) supersedes all prior understandings between them on such matters, oral or written; (iii) shall be governed by and enforced under the laws of Washington, D.C.; (iv) except as otherwise expressly provided in herein, shall not be modified nor shall any rights hereunder be waived except in a writing signed by each and no evidence of any waiver or modification shall be offered or received in evidence in any proceeding, arbitration, or litigation between the parties arising out of or affecting this Agreement, or the rights or obligations of any party hereunder, unless such waiver or modification is in writing and duly signed; and (v) may be executed and delivered (including by facsimile, "pdf" or other electronic transmission) in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. The parties acknowledge that neither of them has made any representation with respect to the subject matter of this Agreement or any representations inducing the execution and delivery hereof except such representations as are specifically set forth herein, and the parties acknowledge that they have relied on their own judgment in entering into the Agreement. The waiver of or acquiescence in any default or breach under this Agreement, or the failure to insist upon strict performance of any obligation under this Agreement, shall not constitute a waiver of any subsequent or other such default, breach or failure. If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect. You represent and warrant that you are neither restricted nor prohibited from engaging in any real estate brokerage activities pursuant to the terms of any agreement (including without limitation any restrictive or non-competition covenant) with any former employer or principal, and further, that you are not in any way restricted or prohibited from entering into this Agreement.

If the foregoing is in accordance with your and our understanding, please sign this Agreement in the space provided below.

Agreed and Accepted:                    **CUSHMAN & WAKEFIELD U.S., INC.**

By:_____            By: _____
Name: Kirsten Ryan                      Name:  Jeremy Bressman
                                        Title:    VP, Brokerage Engagment

**Rider dated as of January 1, 2018 to Section 3508 Broker-Salesperson Agreement (the "Agreement")**
**dated as of January 1, 2018 (the "Effective Date")**
**between**
**Kirsten Ryan ("Section 3508 Broker")**
**and**
**Cushman & Wakefield U.S., Inc. ("C&W")**

**IN THE EVENT OF A CONFLICT BETWEEN THIS RIDER AND (i) THE AGREEMENT · OR (ii) C&W STANDARD SCHEDULE OF COMPENSATION FOR BROKERAGE AND SALES PERSONNEL ("SCHEDULE OF COMPENSATION") AND/OR (iii) ANY HANDBOOK, MANUAL, POLICY, PROCEDURE, GUIDELINE, REGULATION, OR RULE OF C&W, THIS RIDER SHALL CONTROL.**

1.      Unless otherwise defined herein, all capitalized terms shall have the definitions set forth in the Agreement or the Schedule of Compensation.

2.      Provided Section 3508 Broker is then engaged by C&W and is not in material default under any of the terms, covenants, conditions or provisions of the Agreement, C&W shall, reimburse Section 3508 Broker the business development expenses (including cell phone charges) which Section 3508 Broker has incurred and submitted for reimbursement by C&W in in any given calendar year during the term of Section 3508 Broker's engagement with C&W an amount not to exceed (i) for the period commencing on January 1, 2018 and continuing through and including December 31, 2018, $2,500 and (ii) for the period commencing on January 1, 2019 and continuing thereafter through the term of Section 3508 Broker's engagement with C&W, one percent (1%) of Section 3508 Broker's prior calendar year's gross production (collectively, the "Business Development Allowance").  Only regular day to day business expenses incurred for business development purposes, subject, however, in all respects to C&W's practices and expense reimbursement policies with respect thereto, shall in fact be subject to reimbursement. Any use of the Business Development Allowance for charitable purposes must be approved in advance in each instance by C&W in its sole discretion.  C&W may, in its sole discretion, discontinue payment of the Business Development Allowance in any given year(s) provided that such discontinuance shall not be made with respect to Section 3508 Broker only, but shall be made only pursuant to a general corporate policy. Notwithstanding anything contained herein to the contrary, if Section 3508 Broker ceases to be engaged by C&W for any reason, then, in such event, C&W's obligations under this paragraph 2 shall automatically and immediately terminate.

3.      Section 3508 Broker agrees to keep the terms of the Agreement, the Schedule of Compensation and this Rider strictly confidential; provided, however, that the information therein may ·be disclosed to Section 3508 Broker's immediate family, counsel and accounting firm (collectively, "Related Parties") who, in Section 3508 Broker's reasonable judgment, need to know such information, provided such Related Parties agree to keep the information strictly confidential as well.  In no event shall such information be disclosed to any other party, including but not limited to, any broker (whether employed or engaged by C&W or a third party), real estate firm, company or entity; provided, however that Section 3508 Broker may disclose such information and the terms

hereof to comply with any court order or ordered by any arbitrator or arbitration panel, to comply with any subpoena or court rule, to otherwise comply with law, and/or in the context of seeking to enforce his rights hereunder.  Any breach of this paragraph may subject Section 3508 Broker to disciplinary action by C&W up to and including termination for "cause", as such term is defined in the Agreement.

4.      Except as provided herein, the Agreement shall continue in full force and effect.

EXECUTED EFFECTIVE THE DATE FIRST WRITTEN ABOVE.

CUSHMAN & WAKEFIELD U.S., INC.

By: _____

Title: <u>VP, Brokerage Engagement</u>

**Section 3508 Broker**

_____

**KIRSTEN RYAN**



## U.S. STANDARD SCHEDULE OF COMPENSATION FOR BROKERAGE AND SALES PERSONNEL
### EFFECTIVE AS OF DECEMBER, 2015

This schedule governs the division of commissions and fees on all transactions in the United States between Cushman & Wakefield, Inc. and its affiliates ("C&W") and the brokerage and sales personnel employed by C&W ("broker"). This schedule supersedes the schedules annexed to prior employment agreements and, effective December 1, 2015, supplements and becomes part of all such agreements in the United States.

The term "gross commissions" as used in this schedule means the total commission actually received by C&W, less any outside broker's share of the commission and any charge-backs, off-the-top costs or other expenses deductible in accordance with specific brokerage or agency agreements and the policies and rules of C&W including but not limited to fee sharing and referral guidelines (as may be periodically revised by C&W in its sole discretion).

I.  **SALES AND LEASING COMMISSIONS:**

A.  **Basic Commission Division Percentages:**

The broker's share of gross commissions when, as and if received by C&W in any calendar year are as follows, subject to the other applicable terms and conditions set forth in this schedule:

For gross commissions up to $500,000, the broker will receive 50%;

For gross commissions in excess of $500,000 up to and including $700,000, the broker will receive 55%;

For gross commissions in excess of $700,000 up to and including $900,000, the broker will receive 60%; and

For gross commissions in excess of $900,000, the broker will receive 65%.

B.  **Additional Commission Division Percentages:**

INTENTIONALLY DELETED.

C.  **Exclusive Agency Buildings:**

Where the agency broker procures a new tenant, the percentages set forth in Sections I-A and I-B hereof shall apply.

D.  **Other Exclusive Agency Assignments:**

1.  Where the tenant is procured by either the broker who procured the exclusive agency or an outside broker, the percentages set forth in Section 1-A and I-B shall apply.

2.  Except as hereafter provided, where another C&W broker procures the tenant, the broker will be compensated in accordance with Sections I-A and I-B hereof, and the broker who procured the tenant and the broker who procured the agency shall jointly determine in good faith how the gross commission shall be allocated between them.

II.  **INTENTIONALLY DELETED**

III.  **BROKERAGE EXPENSES:**

A.  Broker is required to pay all expenses in connection with his brokerage activities without reimbursement from C&W, with the following exceptions:

i   One-half (1/2) of out-of-pocket travel and lodging expenses (subject to C&W's policies including but not limited to C&W's travel and expense reimbursement policies) will be reimbursed to a broker if, and only if, the reason for the travel and expenses to be incurred has been specifically approved in advance by the Market Leader or Regional President.



ii    Where an owner or landlord will not pay for advertising expenses and a broker feels that advertising is necessary for the successful marketing of the premises, 50% of any advertising expenses will be reimbursed to the broker if, and only if, the reason for the advertising and the expenditure to be incurred has been specifically approved in advance by the Market Leader or Regional President.

iii   C&W will pay the application fee and annual renewal fees for all real estate brokers' and salesmen's licenses.

iv    C&W will absorb 50% of membership dues in a local real estate board for brokers. Fees for all other organizations are to be paid in full by the broker or the salesman, unless otherwise agreed to by the Market Leader or Regional President.

IV.   **ACTIVITY OUTSIDE ASSIGNED OFFICE:**

Brokers and salespersons must obtain the approval of their Market Leader or Regional President prior to engaging in any activities outside the area of their assigned office in accordance with C&W's policy governing such activities.

V.    **ADDITIONAL COMMISSION DIVISION PERCENTAGES:**

INTENTIONALLY DELETED

VI.   **ARBITRATION:**

INTENTIONALLY DELETED

VII.  **INTENTIONALLY DELETED**

VIII. **INTENTIONALLY DELETED**

IX.   **SECTION 409A COMPLIANCE:**

C&W maintains a written policy with respect to C&W and its employees and independent contractors paying taxes in the United States to comply with Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A") and, notwithstanding anything to the contrary contained herein or in the employment agreement, such then current published Section 409A Compliance Policy shall govern with respect thereto. Notwithstanding anything herein to the contrary, no amendment may be made to the agreement or this schedule if it would cause the agreement, this schedule or any payment under either to not be in compliance with Section 409A.

E-FILED; Montgomery Circuit Court
Docket: 4/7/2026 10:22 AM; Submission: 4/7/2026 10:22 AM
Envelope: 25905714

IN THE CIRCUIT COURT FOR Montgomery County (CC)
<br>_City/County_

## CIVIL – NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

***Plaintiff:*** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).
***Defendant:*** You must file an Information Report as required by Rule 2-323(h).
***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

FORM FILED BY: ☒ PLAINTIFF ☐ DEFENDANT         CASE NUMBER _____
<br>_(Clerk to insert)_

CASE NAME: Kirsten Ryan                 vs.    Cushman & Wakefield U.S., Inc.
<br>_Plaintiff_                                _Defendant_

PARTY'S NAME: Kirsten Ryan                          PHONE: 240-485-7990

PARTY'S ADDRESS: 727 Owens Street, Rockville, MD 20850

PARTY'S E-MAIL: kirstenryan@comcast.net

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Jacob I. Weddle                 PHONE: 301-206-5770

PARTY'S ATTORNEY'S ADDRESS: 18 West Church Street, Frederick, MD 21701

PARTY'S ATTORNEY'S E-MAIL: jweddle@rwclawyers.com

JURY DEMAND? ☐ Yes ☒ No

RELATED CASE PENDING? ☐ Yes ☒ No If yes, Case #(s), if known:_____

ANTICIPATED LENGTH OF TRIAL?:_____ hours 4 _____ days

### PLEADING TYPE

**New Case:**    ☒ Original    ☐ Administrative Appeal    ☐ Appeal
**Existing Case:** ☐ Post-Judgment    ☐ Amendment
*If filing in an existing case,* skip Case Category/Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Child Victims Act
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☒ Malpractice-Professional
- ☒ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☒ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt

- ☐ Fraud
- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property/ Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 03/2026)                 Page 1 of 3

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☒ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated Liability above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.   ☐ Liability is not conceded, but is not seriously in dispute.   ☒ Liability is seriously in dispute.

### MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000   ☐ $10,000 - $30,000   ☐ $30,000 - $100,000   ☒ Over $100,000

☐ Medical Bills $_____   ☐ Wage Loss $_____   ☐ Property Damages $_____

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
A. Mediation    ☒ Yes ☐ No          C. Settlement Conference   ☒ Yes ☐ No
B. Arbitration  ☐ Yes ☒ No          D. Neutral Evaluation      ☐ Yes ☒ No

### SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

### ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*
                    *(Case will be tracked accordingly)*
☐ 1/2 day of trial or less      ☐ 3 days of trial time
☐ 1 day of trial time           ☒ More than 3 days of trial time
☐ 2 days of trial time

### BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of    ☐ **Standard** - Trial within 18 months of
Defendant's response                          Defendant's response

### EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE
## MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                   Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff _____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

April 7, 2026
_____
Date

18 West Church Street
_____
Street Address

Frederick            MD        21701
_____
City        State      Zip Code

_____
Signature of Attorney/Party          Attorney Number

Jacob I. Weddle
_____
Printed Name

jweddle@rwclawyers.com
_____
E-mail

CC-DCM-002 (Rev. 03/2026)                    Page 3 of 3

IN THE CIRCUIT COURT FOR_____
City/County

## CIVIL – NON-DOMESTIC CASE INFORMATION REPORT

| DIRECTIONS |
|---|
| *Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a). *Defendant:* You must file an Information Report as required by Rule 2-323(h). ***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*** |

**FORM FILED BY:** ☐ PLAINTIFF ☐ DEFENDANT　　　　**CASE NUMBER**_____
(Clerk to insert)

**CASE NAME:**_____　vs.　_____
Plaintiff　　　　　　　　　　　　　　　　　　　　Defendant

**PARTY'S NAME:**_____**PHONE:**_____

**PARTY'S ADDRESS:**_____

**PARTY'S E-MAIL:**_____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:**_____**PHONE:**_____

**PARTY'S ATTORNEY'S ADDRESS:**_____

**PARTY'S ATTORNEY'S E-MAIL:**_____

**JURY DEMAND?** ☐ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☐ No If yes, Case #(s), if known:_____

**ANTICIPATED LENGTH OF TRIAL?:**_____hours_____days

| PLEADING TYPE |
|---|

**New Case:**　☐ Original　☐ Administrative Appeal　☐ Appeal
**Existing Case:** ☐ Post-Judgment　☐ Amendment
*If filing in an existing case,* skip Case Category/Subcategory section – go to Relief section.

| IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*) |
|---|

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Child Victims Act
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:_____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt

☐ Fraud
☐ Government
☐ Insurance
☐ Product Liability
**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
　☐ Commercial
　☐ Residential
　☐ Currency or Vehicle
　☐ Deed of Trust
　☐ Land Installments
　☐ Lien
　☐ Mortgage
　☐ Right of Redemption
　☐ Statement Condo
☐ Forfeiture of Property/ Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

**CC-DCM-002 (Rev. 03/2026)**　　　　　　Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☐ Court Costs/Fees
- ☐ Damages-Compensatory
- ☐ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Financial Exploitation
- ☐ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☐ Judgment-Declaratory

- ☐ Judgment-Default
- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☐ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order

- ☐ Reinstatement of Employment
- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated Liability above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.　☐ Liability is not conceded, but is not seriously in dispute.　☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000　　☐ $10,000 - $30,000　　☐ $30,000 - $100,000　　☐ Over $100,000

☐ Medical Bills $_____　☐ Wage Loss $_____　☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation　☐ Yes ☐ No　　　　　　　　C. Settlement Conference　☐ Yes ☐ No
B. Arbitration　☐ Yes ☐ No　　　　　　　　D. Neutral Evaluation　　☐ Yes ☐ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*
### (Case will be tracked accordingly)

- ☐ 1/2 day of trial or less
- ☐ 1 day of trial time
- ☐ 2 days of trial time

- ☐ 3 days of trial time
- ☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of　　　　☐ **Standard** - Trial within 18 months of
Defendant's response　　　　　　　　　　　　　　Defendant's response

## EMERGENCY RELIEF REQUESTED

| COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR) |
|---|
| *FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.* |
| ☐ **Expedited** - Trial within 7 months of Defendant's response     ☐ **Standard** - Trial within 18 months of Defendant's response |
| *IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.* |

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff _____ . |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

_____  
Date

_____  
Street Address

_____  
City    State    Zip Code

_____  
Signature of Attorney/Party    Attorney Number

_____  
Printed Name

_____  
E-mail

**CC-DCM-002 (Rev. 03/2026)**      Page 3 of 3

E-FILED; Montgomery Circuit Court
Docket: 4/7/2026 10:22 AM; Submission: 4/7/2026 10:22 AM
Envelope: 25905714

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**KIRSTEN RYAN,**      \*

    **Plaintiff,**      \*

                                    C-15-CV-26-002002

**v.**      \*    Case No. _____

**CUSHMAN & WAKEFIELD U.S., INC.**      \*

                 \*

    **Defendant.**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### ENTRY OF APPEARANCE OF COUNSEL

To the Clerk of the Court: Please enter the appearance of the law firm of Remus, Weddle &

Cavenee, LLC, and specifically Jacob I. Weddle, Esq. (CPF #0712120390) and Ian T. Jones, Esq.

(CPF #2511201126), as counsel for Plaintiff Kirsten Ryan in the above-captioned action.

Respectfully submitted,

*/s/ Jacob I. Weddle*
Jacob I. Weddle, Esq. (CFP #0712120390)
Ian T. Jones, Esq. (CFP #2511201126)
Remus, Weddle & Cavenee, LLC
18 West Church Street
Frederick, Maryland 21701
301-206-5770 (office)
301-206-5771 (fax)
jweddle@rwclawyers.com
ijones@rwclawyers.com
*Counsel for Plaintiff*

Page 1 of 1



**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
50 Maryland Avenue
Rockville, Maryland 20850

Main: 240-777-9400

**To:  CUSHMAN & WAKEFIELD, U.S., INC.**
**255 WEST WACKER DRIVE, SUITE 3000**
**CHICAGO, IL 60606**
**SERVE ON: THE CORPORATION TRUST**
**INCORPORATED**
**2405 YORK ROAD SUITE 201**
**LUTHERVILLE TIMONIUM MD 21093**

Case Number:          C-15-CV-26-002002
Other Reference Number(s):

**KIRSTEN RYAN VS. CUSHMAN & WAKEFIELD, U.S., INC.**

Issue Date: 04/07/2026
Expiration Date: 06/06/2026

## WRIT OF SUMMONS (NEW CASE)

You are hereby summoned to file a <u>written</u> response by pleading or motion, within 30 days after service of this summons upon you, in this Court, to the attached complaint filed by:

Ryan, Kirsten
727 Owens Street
Rockville MD  20850

Witness, the Honorable Chief Judge of the Sixth Judicial Circuit of Maryland.

TO THE PERSON SUMMONED:

1.  Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
2.  If you have been served with a Scheduling Order, your appearance is required pursuant to the Scheduling Order, regardless of the date your response is due.
3.  If you have questions, you should see an attorney immediately.  If you need help finding an attorney, you may contact the Bar Association of Montgomery County's Lawyer Referral Service online at www.barmont.org or by calling (301) 279-9100.

*Karen A. Bushell*
Karen A. Bushell
Clerk of the Circuit Court

NOTE:

1.  This summons is effective only if served within 60 days after the date issued. If it is not served within the 60 days, the moving party must send a written request to have it renewed.
2.  Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reason(s).
3.  Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.**                **Case Number: C-15-CV-26-002002**

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).
5. Service of the Summons CANNOT be made by the moving party.

**Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.**          **Case Number: C-15-CV-26-002002**

## RETURN

☐ Served _____ on _____ at _____
                        Whom                                  Date                            City/State/Country

☐ Summons and    ☐ Show Cause Order and    ☐ Complaint/Petition/Motion Served

☐ Unserved _____    _____
                        Date                                                    Reason

_____    ☐ Sheriff
Signature

Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.                    Case Number: C-15-CV-26-002002

Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.                    Case Number: C-15-CV-26-002002



**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
50 Maryland Avenue
Rockville, Maryland 20850

Main: 240-777-9400

**Case Number:** C-15-CV-26-002002
**Other Reference Number(s):**

**KIRSTEN RYAN VS. CUSHMAN & WAKEFIELD, U.S., INC.**

Date: 4/7/2026

## SCHEDULING ORDER – TRACK 3
## COMPLAINT FILED ON 04/07/2026

THIS ORDER IS YOUR OFFICIAL NOTICE OF CASE DEADLINES AND HEARINGS REQUIRING APPEARANCES. FAILURE TO APPEAR AT HEARINGS OR COMPLY WITH ALL REQUIREMENTS MAY RESULT IN DISMISSAL, DEFAULT JUDGMENT, EXCLUSION OF WITNESSES AND/OR EXHIBITS, ASSESSMENTS OF COSTS AND EXPENSES, INCLUDING ATTORNEY FEES, OR OTHER SANCTIONS.

| EVENT: [ATTENDANCE REQUIRED AT EVENTS] | DEADLINE: |
|---|---|
| *DEADLINE: PLT EXPERTS IDENTIFIED* | July 06, 2026 |
| *DEADLINE: MOTION FOR ALTERNATIVE SERVICE FILED* | August 05, 2026 |
| *DEADLINE: DEF EXPERTS IDENTIFIED* | September 04, 2026 |
| *DEADLINE: ALL WRITTEN DISCOVERY SERVED BY* | November 04, 2026 |
| *DEADLINE: DISCOVERY COMPLETED* | December 18, 2026 |
| *DEADLINE: ADD'L PARTIES JOINDER* | December 28, 2026 |
| MEETING OF ALL COUNSEL, Time and place to be determined PLUS DEADLINES: | January 04, 2027 |
| *DEADLINE: DISPOSITIVE MOTIONS FILED* | January 04, 2027 |
| *DEADLINE: JOINT PRETRIAL STATEMENT FILED* | February 01, 2027 |
| *DEADLINE: RULE 2-504.3(B) NOTICE* | January 04, 2027 |
| *DEADLINE: ADR DEADLINE* | January 07, 2027 |
| PRETRIAL HEARING | February 04, 2027 at |
| ATTENDANCE REQUIRED | 1:30 PM |
| *DEADLINE: PLEADING AMENDMENT TO BE DETERMINED AT PRETRIAL.* | |
| *DEADLINE: VOIR DIRE, JURY INSTRUCTIONS AND VERDICT SHEET DUE 20 DAYS BEFORE TRIAL DATE* | |

**TRIAL COUNSEL SHALL APPEAR** AT THE PRETRIAL HEARING. MOTIONS FILED IN CIVIL TRACK 3 ACTIONS SHALL NOT EXCEED 15 PAGES INCLUDING ANY MEMORANDUM OF LAW AND OPPOSITION/REPLY MOTIONS SHALL NOT EXCEED 10 PAGES WITHOUT LEAVE OF THE COURT. IDENTIFICATION OF ADDITIONAL PARTIES AND AMENDMENT OF PLEADINGS GOVERNED BY RULES 2-211, 2-331, 2-332 and 2-341.
THE **TRIAL DATE** SHALL BE SET AT THE PRETRIAL HEARING BETWEEN THE DATES NOTED BELOW. COUNSEL ARE ENCOURAGED TO CLEAR DATES WITH ONE ANOTHER AND THE ASSIGNMENT OFFICE PRIOR TO THE CASE BEING CALLED.

**Trial Date Between:** February 17, 2027 and May 28, 2027

ANY MODIFICATIONS OF THIS SCHEDULING ORDER MUST BE REQUESTED BY WRITTEN MOTION FILED IN ADANCE OF THE DEADLINES OR HEARING DATES SOUGHT TO BE MODIFIED, PROVIDING GOOD CAUSE TO JUSTIFY ANY MODIFICATION THEREOF.

**Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.** ·    **Case Number: C-15-CV-26-002002**
**Other Reference Number(s):**

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility. The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

_4/7/2026_                     _Karla N Smith_
Date                          Administrative Judge

\* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.


CC:    Kirsten Ryan

       Cushman & Wakefield, U.s., Inc.

       Jacob Ira  Weddle



**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
50 Maryland Avenue
Rockville, Maryland 20850

Main: 240-777-9400

|  | |
|---|---|
| **Case Number:** | **C-15-CV-26-002002** |
| **Other Reference Number(s):** | |

**KIRSTEN RYAN VS. CUSHMAN & WAKEFIELD, U.S., INC.**

Date: 4/7/2026

## ORDER FOR MANDATORY PRETRIAL HEARING – Civil Track 3
## COMPLAINT FILED ON 04/07/2026

In accordance with Maryland Rules of Procedure, Rule 2-504, and in order to administer the trial of cases in a manner consistent with the ends of justice, in the shortest possible time and at the least possible cost to the Court and to litigants, it is this day, by the Circuit Court for Montgomery County, Maryland,

**ORDERED,** that the parties and trial counsel shall appear in court for a Pretrial Hearing. No further notice will be given of this date. Unrepresented parties and/or trial counsel shall meet at least two weeks prior to the hearing date to prepare a written joint pre-trial statement and endeavor to settle the case. If the parties cannot agree to the meeting place or date, it shall be two weeks before the hearing date at 9:00 a.m. in the lobby of the Court House. The joint pre-trial statement shall be signed by all parties and their attorneys and shall be filed with the court at least five days before the Pretrial Hearing and shall contain the following:

1. <u>Nature of the Case</u>: A brief, non-argumentative statement suitable for reading to a jury.

2. <u>Claims and/or Defenses</u>: Each party to set forth a concise statement of all claims and defenses which that party is submitting for trial.

3. <u>Undisputed Issues and Facts</u>: List all issues not in dispute and set forth stipulated facts.

4. <u>Disputed Issues</u>: List each disputed issue and the principal contentions of all parties respecting each.

5. <u>Relief Sought</u>: Specify nature and amount of each item of damage claimed or description of equitable relief sought by each party.

6. <u>Citations</u>: List any cases or statutes which need to be called to the Court's attention.

7. <u>Pending Motions</u>: List title, movant, and filing date of pending motions.

8. <u>Witnesses</u>: Name, address, and telephone number of each person who may be called to testify. As to experts, list matters about which each expert will testify. No party may call at trial any witness omitted from that party's pre-trial statement, except for impeachment or rebuttal purposes.

9. <u>Exhibits</u>: Attach a listing of the exhibits to be offered in evidence by each party at the trial, other than those expected to be used solely for impeachment, indicating which exhibits the parties agree may be offered in evidence without the usual authentication. Complete list of exhibits identifying by exhibit number each document that may be offered at trial. (Stickers to be attached to each exhibit are available in Clerk's office.) Any objections to another party's exhibits should be stated.

10. <u>Deposition Testimony</u>: Designation by page and line of deposition testimony to be offered as substantive evidence, not impeachment.

11. <u>Pleadings and Discovery Responses</u>: Designation by page and paragraph of any pleading or discovery response to be offered as substantive evidence, not impeachment.

**Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.**                     Case Number: C-15-CV-26-002002
                                                                        Other Reference Number(s):

12. <u>Demonstrative or Physical Evidence</u>: Describe any items of non-testimonial, non-documentary evidence - - models, samples, objects, etc. – to be utilized at trial.

13. <u>Videotapes</u>: Identify any videotapes to be shown to the jury and authority for doing so.

14. <u>Requested Jury Selection Questions</u>: Identify those agreed upon and include any objections made by either side.

15. <u>Pattern Jury Instructions</u>: Identify those agreed upon and those not agreed upon. Designate the source of the instruction.

16. <u>Non-Pattern Jury Instructions</u>: Supply complete text of each instruction, with authorities, on a separate page.

17. <u>Verdict Sheet (if requested)</u>: Text of verdict sheet, including any special interrogatories, to be submitted to the jury.

18. <u>Settlement</u>: Minimum demand; Maximum offer.

19. <u>Estimated Length of Trial</u>: _____ days.

and it is further

**ORDERED,** that counsel and unrepresented parties shall file the Joint Pretrial Statement no later than five days before the Pretrial Hearing; and it is further,

**ORDERED,** for cases that have not reached a settlement by the Pretrial Hearing date, that the parties and their counsel and representatives with the authority to settle shall participate in good faith in any Settlement Conference, that may be set at the Pretrial.

_____4/7/2026_____          *Karla N Smith*   _____
Date                        Administrative Judge

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility. The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

\* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.

CC:    Kirsten Ryan

       Cushman & Wakefield, U.s., Inc.

       Jacob Ira Weddle



**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
50 Maryland Avenue
Rockville, Maryland 20850

Main: 240-777-9400

**Case Number:**      C-15-CV-26-002002
**Other Reference Number(s):**

**KIRSTEN RYAN VS. CUSHMAN & WAKEFIELD, U.S., INC.**

Date: 4/7/2026

### SCHEDULING NOTICE AND ORDER OF COURT - Civil Track 3
### COMPLAINT FILED ON 04/07/2026

It is by the Circuit Court for Montgomery County, Maryland, **ORDERED** as follows:

1.) Proof of Service. Within sixty-five (65) days of the filing of the Complaint, Plaintiff must file proof of service of the following on each of the Defendants: copies of the Summons, the Complaint, this Scheduling Notice and Order of Court, Order for Mandatory Settlement Conference/Pretrial Hearing, and the Scheduling Order.

   a.) As to any Defendant for whom such proof of service has not been filed, the Court will consider dismissing the Complaint without prejudice pursuant to Rule 2-507.
   b.) As to any Defendant not timely served, the Court may sever the case against that party.
   c.) **A motion for alternative service as to any unserved Defendant may not be filed after the 121ˢᵗ day after filing of the complaint: DEADLINE: August 05, 2026**
   d.) **Defendants who are not served by the 121ˢᵗ day after filing of the complaint are subject to dismissal under Rule 2-507.**
   e.) As to any Defendant served with the Summons and Complaint, the Defendant must file the Defendant's Civil Information Form with the initial pleading and mail a copy to Plaintiff.
   f.) <u>**FAILURE TO SERVE A PARTY WILL NOT RESULT IN MODIFICATION OF THE DEADLINES OR REISSUANCE OF THE SCHEDULING ORDER.**</u>

2.) Answer or Other Responsive Pleading. Within the time permitted under Maryland Rules, each Defendant must respond to the Complaint by filing an Answer or other responsive pleading. These pleadings must be filed in accordance with Rule 2-321. If no timely response has been filed, the Court, upon request, may enter an Order of Default pursuant to Rule 2-613.

3.) Initial Discovery. No later than ninety (90) days from the filing of the complaint, the parties shall complete sufficient initial discovery to enable them to make decisions regarding (a) settlement, (b) consideration of available and appropriate forms of alternative dispute resolution, (c) limitation of issues, (d) stipulations, (e) any issues relating to preserving discoverable information, (f) any issues relating to discovery of electronically stored information, including the form in which it is to be produced, (g) any issues relating to claims of privilege or of protection, and (h) other matters that may be considered at the hearing, including:

   a) **Initial Disclosure of the Plaintiff's Experts to occur no later than deadline provided on the Scheduling Order:** The deadline for the disclosure of Plaintiff's experts is approximately ninety (90) days from the date of filing. Given the early stage of discovery, while disclosure of the area of expertise is expected, some flexibility will be applied as to the specific opinion of the expert. The obligation to supplement the information provided by this deadline continues and must be provided without delay as soon as it is known to the Plaintiff, but no later than one hundred twenty (120) days from the filing of the complaint, without leave of the Court. This includes any substance of the findings and opinions, grounds for each opinion on which the expert is expected to testify, as well as copies of all reports received from each expert witness. Under no circumstances may this information be withheld.

4.) Discovery of Electronic Information. Further, with regard to the discovery of electronic information, the Parties shall confer in person or by telephone and attempt to reach agreement, or narrow the areas of disagreement, as to

**Kirsten Ryan vs. Cushman & Wakefield, U.S., Inc.**    Case Number: C-15-CV-26-002002
Other Reference Number(s):

the preservation of electronic information, if any, and the necessity and manner conducting discovery regarding electronic information, and the parties should address the following:

a) Identification and retention of discoverable electronic information and what, if any, initial discovery and any party requests in order to identify discoverable electronic information;
b) Exchange of discoverable information in electronic format where appropriate, including:
    i) The format of production, i.e., PDF, TIFF or JPEG file or native formats such as Microsoft Word, Word Perfect, etc., and the storage media on which the information shall be exchanged; and
    ii) Whether separate indices will be exchanged and whether the documents and information exchanged will be electronically numbered.
c) Whether the parties agree as to the apportionment of costs for production of electronic information that is not maintained on a party's active computers, computer servers or databases;
d) The manner of handling inadvertent production of privileged materials; and
e) Whether the parties agree to refer electronic discovery disputes to a Special Magistrate for resolution.

The parties shall reduce all areas of agreement, including any agreements regarding inadvertent disclosure of privileged materials, to a stipulated order to be presented to the court.

5.) Attorneys' Fees. If a party intends to assert a "substantial claim" for attorneys' fees, counsel shall provide a written statement to the Court, setting forth whether the claim is pursuant to law, statute or contract, identifying the legal theory, statute or contract provision, and whether the claim is triable by jury. The Court will determine whether to require enhanced documentation, quarterly statements, or other procedures permitted by Maryland Rules. If triable by jury, the Court will determine the necessity of a separate discovery schedule, to include, if appropriate, the designation of experts relating to this issue. (See Rules 2-703, 2-704, and 2-705.)

6.) Mediation. PLEASE BE ADVISED THAT THE COURT WILL ORDER MEDIATION IN THE ABOVE-CAPTIONED CASE. PLEASE DISCUSS ADR/MEDIATION WITH THE OPPOSING PARTY (OR COUNSEL, IF APPLICABLE). Parties choosing a mediator must pay the rate agreed upon by the parties and the mediator. Where the court designates a mediator, pursuant to Rule 17-208, the parties will pay the hourly rate established by the court. Counsel/parties may object to participating in mediation in accordance with Maryland Rule 17-202(f) within thirty (30) days after entry of the order, may file (A) an object to the referral, (B) an alternative proposal, or (C) a "Request to Substitute ADR Practitioner" substantially in the form set forth in Rule 17-202(g).

_____4/7/2026_____      _Karla N Smooth_____
Date                    Administrative Judge

* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.

CC:    Kirsten Ryan

Cushman & Wakefield, U.s., Inc.

Jacob Ira  Weddle